This honorable appellate court for the Second District is now open. The Honorable Justice Susan F. Hutchinson presiding, along with Justices Anne B. Jorgensen and Joseph E. Burkett. The case is number 220-0047, David Souza et al., plaintiff's appellant, versus the City of West Chicago et al., defendant's appellee. Arguing for the appellants, George L. Acosta. Arguing for the appellee, City of West Chicago, Sean Conway. Arguing for the appellee, Water Resources, Inc., Michael Rezus. Thank you, Mr. Kaplan. We, I know because we have two appellees, we have some time issues, and counsel are both aware of that, correct? Yes, Your Honor. Yes, Your Honor. All right. Then, that being the case, if all parties are ready, we will begin. And that would be with Mr. Acosta, please. Good morning to all the Justices, Defense Counsel. I am George Acosta, Lead Counsel for Plaintiffs David Souza, Jeffrey Pizzazzi, and Atchison Associates. To be clear from the beginning, I'm sorry, may it please the court. To be clear from the beginning, we are asking this court to reverse the trial court's judgment order of October 15, 2019, in which it found the City of West Chicago's water billing ordinance to be constitutionally valid as an exercise of its home rule power under Section 6A of, Section 6 of Article 7 of the Illinois Constitution. There are two specific reasons why the trial court's analysis, however, was flawed. First, in the context of this case, the subject matter of the ordinance does not pertain to its, quote, local government and purpose as described in Section 6A, such as to protect public health, safety, morals, welfare, or to license, tax, or incur debt. The defendant's position is that home rule authority is so broad that it would permit a home rule unit to override and exempt itself from virtually any direct state regulation of the home rule unit. To be sure, home rule authority is broad. However, there exist key limitations which come into play in the context of this case. Home rule authority may not override state law where vital state interests are involved, and home rule authority is limited to regulation of issues which pertain only to local governmental affairs. As explained in our brief, our Supreme Court has held that these two limiting factors are essential to a proper analysis of whether home rule power is constitutionally exercised. The statute at issue herein, which is included in the Illinois Municipal Code, the Code obviously regulates a wide variety of how municipalities legally operate within our state. The statute was enacted as a consumer protection law for Illinois residents who draw their water from municipally owned water utilities. For years, the same consumer protections were already in under the Illinois Public Utilities Act, the IPUA, for Illinois residents who received their waters from public utilities. So the statute was enacted and became effective in August of 2017 to close a loophole and ensure that all Illinois residents were afforded the same consumer protections. This is the vital state interest at issue in this case. The home rule ordinance at issue, on the other hand, was enacted approximately two months after the subject lawsuit was filed. The home rule unit here enacted its ordinance in order to specifically attempt to defend against this underlying lawsuit. This was a purely defensive mechanism. It was not to address, regulate, or protect public health, safety, morals, or welfare, nor to tax, license, or incur debt, all of which were constitutionally enumerated legitimate purposes for home rule power to be The statute requires West Chicago to bill its water customers within 12 months. The ordinance completely nullifies that requirement and allows West Chicago to bill water services provided to its customers at any time in the past, sometimes many years later. So when a home rule law conflicts with state law, the first issue courts need to assess is whether the home rule law is constitutionally authorized. Our Supreme Court's decision in Palm versus 2800 Lakeshore Drive Condo Association controls the analysis of whether a home rule ordinance is constitutional. The Supreme Court in Palm expressly established a two-prong analysis. First, court must specifically find that the substance of the home rule ordinance pertains to a local governmental affair. This makes sense because the limiting language in Section 6A, which is the constitutional basis for exercising any type of home rule authority, it is crucial to understand that this finding precedes any analysis of whether the conflicting state law contains an express language designed to limit or prohibit the concurrent exercise of home rule authority under Sections 6H or 6I. Logically, if the subject of the legislation is not a local governmental affair, the analysis stops and the home rule unit's attempted exercises has to be unconstitutional. As noted in the Palm decision, this prong requires looking at whether the state has expressed a vital interest in the subject matter of the regulation. If it has, then the issue by definition is not a local governmental affair. At issue in the trial court, as well as here, is whether West Chicago's attempted invocation of home rule authority to absolve itself and cover over 20 months of its violation of state law can be constitutionally justified. The clear answer is no, it cannot. The constitutionality of any home rule unit's legislation is subject to a de novo review in this court. Therefore, all aspects of constitutional requirements must be met in this court's analysis and judgment of West Chicago's ordinance. In this case, the state legislature clearly and unambiguously expressed a vital interest in closing a pre-existing loophole which treated customers of municipally owned water utilities differently than those customers of public utilities. The statute in question was added to the Illinois Municipal Code in August of 2017, and in it, the state expressly sought to expand the same consumer protections afforded to customers of public utilities to those of municipally owned water utilities. Accordingly, the issue being regulated cannot be defined as which is a local governmental affair of the city of West Chicago. No amount of unique circumstances and challenges in the city's billing system, and they had many, can turn the state's interest of standardizing consumer protections throughout the state into a local issue. There is no constitutional basis for allowing the city to invoke its home rule authority over an issue which is not purely local governmental concern. There are also two unique and dispositive factors we maintain which distinguish this case from the vast majority of cases interpreting conflicting state and home rule legislative enactments, and which render West Chicago's attempted exercise of home rule authority unconstitutional and illegitimate. First, the object of state regulation here is the home rule unit itself, its conduct in billing for its water services. It is not a category regulating third parties or general commercial or environmental issues. And second, it's uncontested that the city of West Chicago passed the subject ordinance amending its water billing policy as an attempted defense to the underlying lawsuit herein. The trial court's analysis of whether the issue being regulated was a local governmental affair instead of a statewide vital interest was overly narrow. The trial court focused on the fact that the city was performing the billing practices itself and encountered unique problems such as defective water meters, etc. That analysis fails to recognize that the state had unambiguously expressed a vital interest in standardizing consumer protections throughout the state. West Chicago's ordinance attempts to alter that vital statewide concern. While it is certainly limited to West Chicago's own conduct, it nevertheless destroyed the statewide uniformity of regulation sought by the state. This is precisely why the ordinance is unconstitutional. It obstructs a vital state interest, and that interest is not a local governmental affair of the city of West Chicago. It goes without saying that each and every municipal-owned water utility would have its own unique circumstances in attempting to meet the statewide standard. However, those unique circumstances do not transform the vital state interest into one of local governmental concern. For that reason, the trial court's judgment order of October 15, 2019 must be reversed, and the city's amended billing ordinance must be stricken as an unconstitutional attempted exercise of home rule authority. Alternatively, plaintiffs maintain that the language of the from enacting contradictory provisions to exempt themselves from state regulations. As I noted previously, because the state statute applies to all municipalities operating water utilities, that includes those municipalities which are home rule units as well as those which may not be. The state is expressly regulating all municipalities operating water utilities, including those which are home rule units, requiring them all to bill their water services to their customers within the parameters set forth in the statute. The express language of the statute therefore meets the requirements of the statute on statutes because it specifically limits the function of the municipality. Plaintiffs also maintain that even if this court were to uphold the constitutionality of the city's exercise of home rule authority, the trial court erred by not striking down the intended retroactive impact of that ordinance. And we cite the cases of Perry, Lazenby, and Henrichs for that purpose. Lastly, a quick word about the defendant's alleged jurisdictional and waiver defenses. This court has already rejected the jurisdictional arguments by denying the city's motion to dismiss this appeal based on the same argument. Both plaintiff's post-judgment motions were filed within 30 days following the trial court's judgment, and both motions attacked the substance of the judgment itself. Thus, despite the city's subterfuge about which code provision should have been invoked, both post-judgment motions operated to toll the statutory time period. Finally, plaintiffs seek to have this court reverse the trial court's dismissal of the order concerning the plaintiff's third-party beneficiary claim against Water Resources Incorporated. As to that claim, plaintiffs have supplied ample documentary support for the fact that West Chicago's water customers were indeed intended beneficiaries and not merely incidental beneficiaries of the water meter updating contract. Water customers stood to accrue several direct benefits from the contract being performed. In this regard, we cited the holdings in Briarcliff, which is a second district case, and Radarowitz, which was a Supreme Court case, in support of our third-party beneficiary status. We request reversal of the trial court's grant of water resources motion to dismiss entered June 5, 2019, and to remand that claim as well to the trial court for further proceedings. I'd be glad to take your questions. Thank you. Thank you, Mr. Acosta. Justice Jorgensen, do you have questions? In the statute, where is the preemptive specific language in the state statute? Well, respectfully, I think that question presupposes that it requires that, and I will say this. All right. You know what? You're correct. I'll back up. All right. Tell me how a billing practice becomes a vital state interest. Is it Justice Jorgensen asking the question? Yes, it is. I apologize. No, I apologize. It becomes a vital state interest because the state has stated such in its legislative history. It enacted the statute so that it would close a loophole, as I stated earlier, and it would standardize how all consumers of water throughout the state are equally treated. This is a vital state interest. I'm sorry. Go ahead. When West Chicago unilaterally comes in and says, no, we're going to exempt ourselves from this state mandate, it destroys what is stated to be a vital state interest. And you get that from the legislative history and the legislative comments, correct? Yes, I do. Okay, but aren't we supposed to first look at the statute to determine purpose and intent, and only if there's ambiguity go to other sources? Well, I think that's proper construction. Absolutely. However, the statute itself says that any municipality operating a waterworks facility shall bill. So it's a direct mandate, and this is part of the Illinois Municipal Code, which applies obviously to all municipalities. So we have to start out with the mandatory nature of the statute. And then the question is, well, is it a vital state interest? Well, how do you determine that? I think Palm requires us to make that analysis. And so the legislative history is certainly part of that. Okay. So let's just assume for the sake of argument that it is not a vital state interest here, point to me something in the statute where the legislature is specific in its preemption, other than, I did hear you, the word any municipality. Well, it's not just any municipality. And I think that was important in the context of defense counsel's raising of the general. That's not the category that's defined in this statute. This is any municipality operating a waterworks. So it's a defined limited category of municipalities that we're talking about. And to answer the first part of that question, you asked where the preemptive language is. Well, I think the way that I'm looking at that, the way that we're looking at that and is there's the statute on statutes and the statute on statute says that unless there's a specific language limiting or denying the power or function and the language specifically sets forth in what manner and to what extent it is a limitation or denial of the power or function of a home rule unit. The reason I raised that is because this of this defined category of municipalities, it's limiting it. It says you must do this, you shall do this. That we urge the court to view as an express limitation on the function of these defined municipalities. Not sure if that answers your question directly, but that's my- Okay, fair enough. What about the retroactivity? Yeah. So we raised in a post judgment motion that if you're going to find this to be constitutional as a valid home rule exercise, then you must look at the intended retroactive impact. And the retroactive impact here takes away vested abatement rights that the customers of West Chicago had in terms of bills that were so old that the state statute abated their responsibility to pay those bills once the statute was enacted in August of 2017. Now, to be clear, that there was still a 12-month look-back period that was still valid. In other words, if it went into effect on August 18th of 2017, which I believe it did, anything earlier than August 18, 2016 would have been abated at that moment. That was a vested right that these customers had. And then for 20 months, they could presumably rely that they didn't owe that money anymore. Well, West Chicago continued to violate the statute for 20 months, even before passing this ordinance. And then because it tries to implement it retroactively, it says, oh, by the way, all of those other older bills four or five years back, you'll ask for those as well. So there was a 20-month period of time where vested abatement rights were in place and they shouldn't be disturbed. That's our argument on that. Well, here, let me ask you this. Do you think that there is a vested right to not have to pay your water bill? Under the statute, I do. I absolutely do. And that's where you're drawing your authority from is if the statute says, well, when it was enacted, you go back 12 months. But other than that, the city has walked away from its right to you can't bill for that anymore because it's right with potential fraud. I mean, it's right with potential misinformation that isn't accurate anymore. I mean, West Chicago was essentially guesstimating what people owed at different times. People would sell their homes and West Chicago would come into the closing and say, I think you owe us $3,000. Well, how do you get that? Well, guesstimating. So the fact that the state stepped in and said, no, you've got to bill your customers the way the public utilities are required to do, that that abated those financial obligations. All right. I have no further questions. Thank you. Thank you. Thank you, Justice Jergensen. Justice Burkett, do you have questions? Yes, I do. Just a couple, Your Honor. Good morning, Mr. Acosta. Good morning, Justice Burkett. Your position is that the law here does expressly limit the ordinance at issue, correct? That's one of our positions. Yes. Yes. Use as the court discussed in Palm, the statute on statutes, you need almost specific language. Well, you know, the specificity of languages, I guess, in the eye of the beholder. But what we're saying is that because it specifically limits the function of the municipality and its billing processes, that it does meet the statute on statutes. The statute on statute says that there has to be specific language limiting the power or or function or function. And when it says shall bill, we believe that that limits the function of the municipality. With respect to the jurisdictional argument that was made by the defendants, you mentioned that we denied the motion and that's the end of that issue. But you also understand that denial of motion to dismiss is not binding on the panel, correct? Well, I certainly accept that, Justice Burkett. What is your jurisdiction? Go ahead. Sure. My argument, my first point of my argument is that the matter has already been raised, already been adjudicated, and that should be part of the law of this case. However, on the merits of that issue, I welcome an analysis of it because both of our post judgment motions, both of them were filed within 30 days and both of them attacked the substance of the judgment order itself. All of the cases that the defense counsel relies upon in making the jurisdictional argument avoid those two crucial elements, filed within 30 days, attacking the judgment itself. The last of those post judgment motions was disposed upon, was disposed of on December 17th and this notice of appeal was filed on January 15th within that 30-day period. So, Supreme Court Rule 303 has been met and that's my argument on the jurisdictional aspect of this. Thank you, Mr. Acosta. That's all I have, Your Honor. Thank you, Justice Burkett. Mr. Acosta, don't Supreme Court rules and significance, we saw say one post judgment motion. That was exactly what defense counsel raised after we did file two post judgment motions and that's why, Justice Hutchinson, that's why we agreed to withdraw one. But it was under agreement and it was documented by the court that in agreeing to do that and avoiding having, potentially having to, you know, ask for leave to combine the two motions or deal with it in some other fashion, that we would just go ahead and preserve all of the issues raised in the motion to reconsider for appellate court purposes and that's included in the trial court's order. So, you know, we viewed it at that time as the chances of changing the trial court's were probably less than the chances of getting him to look at the retroactivity issue and so that's how we decided to deal with it. Okay. Now, without a long dissertation on this, what is the primary purpose of Home Rule Authority? Well, my understanding, Justice Hutchinson, is that Home Rule units are closer to the people being affected by the law and the Constitution recognizes that statewide policies sometimes don't fit the needs and particular circumstances of local communities and so I think the concept of Home Rule Authority is a good one, generally, but when we follow, well, I'll just answer that, that was your question. Okay. So, and you gave me my next question and I'll use your language, what could be closer to the people of West Chicago than some of their neighbors are getting what you call complementary water, what I call free water, because the city, and not because of the city's fault, but because of some instruments, some machines that don't function properly? I think that's an interesting way to describe the situation. I'm not sure it's 100% accurate and the reason I say that is because the residents of the city of West Chicago were impacted by this water meter updating project. All of them were affected by it. Everybody's water meter had to be replaced. The particular circumstances of issues with, I think, software communication and the function of some of these meters, that was the responsibility of, I think, under the contract of Codefendant Water Resources Incorporated and that's where part of this case, but nobody is getting quote unquote free water. What's happening is that if you're not meeting the state requirement to build properly and in a timely fashion, then you can't build for that anymore. The result of that is that some people, probably most of the people in West Chicago would have gotten quote unquote free water, as you said, for some period of time, but it's the city's responsibility to be able to track usage and provide reasonable bills. If it doesn't do that, why is there an onus on the part of the customer to somehow make up an approximated amount, which may or may not be accurate compared to your neighbor in the analogy that you use? It is the city's responsibility and the state requires the same. If there is a problem with Water Resources Incorporated and its work, the city can certainly push that responsibility and liability onto that party. All right. If legislation is presumed valid, legislative action, and an ordinance passed by a home rule or not, just for purposes of this question, is considered legislation, how does when this city enacts this ordinance proof that it wants to circumvent the state statute when a local billing issue is the real problem? Well, I think if you take it in a vacuum as far as when it passed, then you may have a valid observation on there, but there are other circumstances here that talk about the motivation of the city. The city came into court after this lawsuit was filed and they asked for an extended period of time to answer. And looking at the I think possibly the very night it was enacted, many other issues in the city of West Chicago in their board meetings have been introduced, sent to committee for consideration and recommendations, and then they come back and they come back and they come back. This one was not. This one came up and was enacted in April of 2019, two months after this lawsuit was filed on the very first time it was presented. So generally speaking, I don't think it's illegitimate when they enacted, but in this case, it is obvious. All right. Does that change any, would your answer change any, because West Chicago is a home rule authority, which by the way, or home rule unit was at some agreement as well? Well, respectfully, I don't think it does change it. I think that the constitutionally enumerated purposes for home rule exercises of authority have to do with, as it says in section 6A, for the protection of the public health, safety, morals, and welfare to license, tax, or incur debt. This, the motivation that is present here doesn't fit any of those categories. Well, doesn't West Chicago have an obligation to the city, to its residents, to make sure that its finances are in order and it can pay for the things that the city needs? And certainly collecting uncharged water amounts or water use would certainly affect their city finances. Well, that's absolutely true. Absolutely true. However, they also have an obligation to follow state law where a vital state interest has been enacted. But again, for a practical solution here, breach of contract rights against water resources incorporated, they can pursue perhaps insured losses. There's a number of things that they can do to remain financially sound without violating state law or nullifying state law in this unauthorized manner. All right. Last question that I have is to a home rule unit or to any unit, is impossibility to comply, which might be the case here, a defense or a reason not to follow the statutory authority? Well, honestly, I don't know that. My perception is that I can't imagine what impossibility means in this context because it simply means that the law simply requires them to stop billing for water services beyond 12 months after they were provided. So I don't know how that would be impossible in any context. Even though you're pleading say you're not looking for complementary water, in essence, that is what would happen if they could not bill because it was impossible due to water resources equipment? I think the answer is that there would be an abatement of that financial responsibility and the city certainly has other options available to it, as I indicated earlier, in terms of pursuing claims against water resources incorporated, which they blame for all of these problems. All right. Thank you, Mr. Acosta. Justice Burkett or Justice Jorgensen, do you have any questions based upon mine? I do not. All right. Thank you very much. Sir, you'll have an opportunity to reply and rebuttal if you choose after we've heard from the other parties. Now, between Mr. Conley and Mr. Reces, have you decided who will go first? We have, Your Honor. This is Sean Conway. We've decided that I would go first and then Mr. Reces would go next. Very good. Thank you. You may proceed. May it please the court, Sean Conway, on behalf of Appellee City of West Chicago. The city is requesting that this court dismiss plaintiff's appeal for lack of jurisdiction. Alternatively, the city requests dismissal because plaintiff's entire appeal is based either on arguments raised for the first time on appeal or for the first time in plaintiff's post-judgment motion. Finally, to the extent the court is with jurisdiction and plaintiffs have not forfeited their arguments on appeal, the city is requesting that the court affirm the judgment of the trial court in its entirety. Turning first to the issue of jurisdiction, this issue is dispositive in light of Supreme Court Rule 303 and the court's rulings in the Shookus, Hyden, and most recently, Stanilla cases. We know that Supreme Court Rule 303 provides that a post-judgment motion must be directed against the final judgment in order to toll the time for appeal. Additionally, Shookus, Hyden, and most recently, Stanilla hold that post-judgment motions that are not directed against the judgment do not toll the time for appeal. This is irrespective of how the motion is actually titled. These cases hold that the court looks to the substance of the motion to determine whether the motion is actually directed against the judgment. In this case, plaintiff's post-judgment motion, I believe it's titled something to the effect of motion to limit the scope of the court's final judgment order, was not directed against the final judgment order. It was directed at obtaining declaratory relief on an issue that plaintiff never raised prior to judgment. That issue being plaintiff's new challenge to the temporal reach of the city's home rule ordinance or its retroactive effect. This is confirmed by plaintiff's counsel's remarks on the nature of their post-judgment motion to the trial court in the record of proceedings at pages 77 and 78. Counsel stated to the court, our motion is asking the court to look at an issue that the court never mentioned in its October 15th judgment order. It was never mentioned in the original motion for judgment on the pleadings. It was never mentioned in our response brief. Counsel goes on to state on page 78, the court has made a judgment on October 15th that the home rule authority of West Chicago supersedes state statute. And if you read my motion carefully, you'll see that we're not challenging that aspect of the court's ruling. Therefore, it's not really a motion to reconsider what was decided on October 15th. The city agrees with counsel's statements made to the trial court that they were not challenging any aspect of the trial court's final judgment order. Instead, what they were doing was raising a new issue as to the lawfulness of the retroactive provision of the city's ordinance for the first time in a post-judgment motion. They were seeking a declaration that the ordinance was unlawfully retroactive. Then presumably once plaintiffs received that favorable declaration, they were asking the court to modify the court's final judgment order. So the motion itself was not directed in any way at the substance of the final judgment order or any of the issues that the final judgment were resolved. This is precisely what happened in the Shookus, Hyden, and Stenilla cases where although the motions were titled with titles like motion to vacate and motion to reconsider, the release that they were really asking for in the substance of the motions had nothing to do with the final judgment order. Even if this court is with jurisdiction, the court should dismiss plaintiff's appeal because it entirely consists of arguments either raised for the first time on appeal or for the first time in a post-judgment motion and therefore are forfeited under the Evanston Insurance Company case. The city cited in its brief. We look to what plaintiffs actually argued before the trial court and what they argued in their response to the city's motion for judgment on the pleadings. Their argument is contained in the record at pages 605 through 608. Plaintiffs argued in the trial court that quote, Illinois courts have consistently held that municipal control over public utilities have been preempted by statewide control of public utilities. In support, they cite the Orland Hills, Commonwealth Edison, People's Gas and Light, and Kerwin cases. These cases stand for the proposition that the Public Utilities Act preempts municipal regulation of third-party public utilities like gas utilities or electric utilities. Obviously, that's not the case here. The regulation at issue is the city's water billing regulation that applies to its own municipally owned and operated water distribution system. The argument that was actually raised in the trial court doesn't even make an appearance on appeal. That argument was abandoned. Instead, what the plaintiffs argue for the first time on appeal is the city's ordinance is impliedly preempted by section 11150-2 of the Illinois Municipal Code, that the city's ordinance does not pertain to the city's local government and affairs, that the city's ordinance is expressly by section 11152 of the Illinois Municipal Code, that the court should strike the city's ordinance because it interferes with section 11152 of the Illinois Municipal Code, and that the city's ordinance is unconstitutionally retroactive. None of those arguments appear and none of those arguments were developed in the plaintiff's response to the city's motion for judgment on pleading. Those arguments are procedurally forfeited and waived. They consist of plaintiff's entire appeal, and we request that the court dismiss plaintiff's appeal on that additional basis. But even if this court has jurisdiction and the plaintiffs have preserved their arguments on appeal, none of their arguments have merit. I'll start with the first plaintiff's first argument that the city's ordinance is impliedly preempted by section 11150-2 of the Illinois Municipal Code. We know since the Supreme Court's decision in Roman in 1998 that the concept of comprehensive scheme preemption is not a sufficient basis for challenging home rule authority. Express and express limitation must be provided. Both Justice Burkett and Justice Jorgensen pointed that out. Plaintiff's next argument is the city's ordinance does not pertain to the city's local government and affairs. As Judge Fullerton determined, it absolutely pertains to local government affairs. It pertains to the city's water billing practices for its locally owned water distribution system and addresses local problems encountered by the water meter replacements. Justice Hutchinson was spot on in mentioning that there couldn't be a more close issue to the residents of the city of West Chicago than their water system not being adequately funded. It is as local as it gets. Plaintiff's next argument is the city's ordinance is expressly preempted by section 11152 of the Municipal Code. Their argument is that the use of the words any municipality indicates the legislature's intention to limit home rule authority. That proposition was directly contradicted by the Shacker case we cited in the brief. As well, we pointed the court to at least seven separate statutes or sections of the Illinois Municipal Code where the legislature had no problem indicating a limitation on home rule authority and using the specific language. The Illinois legislature knows exactly what to say. They've done so at least seven times in the Illinois Municipal Code. Plaintiffs argue that the court should strike the city's ordinance because it interferes with section 11150-2 of the Illinois Municipal Code. The mere fact that home rule municipal ordinance is inconsistent with the state statute is not sufficient to invalidate a home rule ordinance and that was announced by the Palm Court. Finally, the plaintiffs argue that the city's ordinance is unconstitutionally retroactive. We know that courts are to give effect to retroactive laws absent a constitutional prohibition. There is no vested right in a public law unless rights are decreed by the court and that's the Commonwealth Edison case we cite in the brief. Plaintiffs argue that they have a vested right to free water use under section 11152. We are not aware of any court decree in Illinois that declares that plaintiffs are entitled to complementary water under section 11150-2. Therefore, there's simply no vested right to free water usage. For these reasons, the city requested the court dismiss plaintiff's appeal or alternatively, the city requested the court affirm the trial court's judgment in its entirety. Thank you. Thank you, Mr. Conway. Excuse me, Justice Jorgensen, do you have any questions? I do. One question. I'll start with the same order of arguments that you did. And while I appreciate your forfeiture issue and the dual motions that were filed, but council represented that there was an agreement to preserve those issues for appeal. Should we disregard that? Well, the motion that council is referring to is the motion for reconsideration, which was withdrawn in late November. And the only thing the order says is that to the extent they file an appeal, a timely appeal, they can raise those issues. Right. They did not. They did not. That motion reconsider was withdrawn. The only motion that was left was this motion to limit the scope, which our position is not directed at the judgment at all. Is it your position then there was an agreement, but plaintiffs never re-raised that issue? That's right, Your Honor. And again, the agreement is to the extent they file a timely appeal, which nothing prevented them from filing a notice of appeal the day after they withdrew their motion to reconsider. They could have then preserved those arguments for appeal. Also, with respect to the issue of forfeiture, that is a limitation on the parties, not on the court. Would you agree with that? I would, Your Honor. I will say the traditional arguments to ignore the general rule of forfeiture, I didn't see in the plaintiff's briefing at all. I believe the plaintiff's position is that they did raise all of these arguments. I don't believe that they have requested the court disregard the rule of forfeiture. Okay. Do you think they have to ask or we can do it through a sponte? Judge, I hate to say you can't do something, but generally the court is looking at the arguments raised by the parties. Okay. And I will take that question back. That was unfair to put you on the spot like that. I want to talk about your authority to create an ordinance. Let's assume that it fits within the home rule guidelines. You can do so, but tell me why it can be retroactive and is not simply prospective. As I mentioned, Illinois courts give effect to retroactive laws. If the law indicates its temporal reach and it's retroactive, absent a constitutional prohibition, the courts give effect to those laws. That's well-established case law. I am looking at plaintiff's argument. I don't see any argument or prevailing argument showing that there is some sort of constitutional problem with the city's ordinance other than plaintiff's general position that it conflicts with the state law. Okay. And your position then, there is no vested rights here, so that does not tarnish your ability to impose retroactivity? Correct, Your Honor. As far as we are aware, there is no case that has decreed that section 11-150-2 provides a vested right to free water. Let me ask you this. Why the timing of the ordinance? Well, I mean, there is obviously no secret that a lawsuit was filed. The city is not hiding from that. This was a problem, as we mentioned in the brief, a problem not of the city's making. There were many defective water meters. The city has been trying to get all of its water billing up to date, and they are trying to deal with a very local problem. So, you know, that's where we stand. This is not something that is particularly new. The state does it routinely. They pass curative legislation. Many times it happens after a lawsuit has been a legal prohibition in doing that, and that's what the city did in this case. Okay. I have no further questions, Justice Hutchison. Thank you. Thank you, Justice Jorgensen. Justice Burkett, do you have questions of Mr. Conway? Just one, Your Honor. Thank you. Mr. Conway, Supreme Court Rule 303A provides that a post-judgment motion includes any motion, any post-judgment motion that extends the time includes a motion for retrial or modification or vacation of judgment or other similar relief, correct? Correct, Your Honor. And here, didn't the post-judgment motion that you were discussing seek a modification? Yes, but what we have here, Judge, is a situation akin to the situation in Shookus. The motion was styled as a motion to modify a final judgment order, but in substance, it was actually a motion for leave to file a second amended complaint, an out-of-party plaintiff. The court in Shookus determined that that motion is not in substance directed against the judgment, because that's an additional requirement of Supreme Court Rule 303, that the post-trial motion be directed against the judgment. Same situation in Hyden. The motion was styled as a motion to reconsider, but in substance, it really was a motion to clarify the final judgment. Court determined that it was not directed against the judgment. Most recently in Stanilla, the motion was styled as a motion to vacate a forcible entry and detainer judgment in favor of the plaintiff, but in substance, it was a motion to dismiss plaintiff's complaint, and it was not directed at the judgment. That's exactly what we have here. We have a motion requesting new declaratory relief as to the lawfulness of the retroactivity provision in the city's ordinance that was never raised prior to the judgment, so the judgment didn't address it at all, rightfully so. Plaintiffs never raised it. The defendants made a note of it in our pleadings, but only to say to the court, this isn't an issue that's been raised. So again, this remaining post-judgment motion isn't directed at the final judgment. It's directed at obtaining new relief. Thank you, Mr. Conway. That's all I had, John. Thank you, Justice Burkett. Mr. Conway, usually we call the motions to reconsider because that just seems to be what the rules suggest, but a motion to modify, if granted, due to new information, although it wasn't brand new information, still challenges the impact of the judgment, doesn't it? It does, Judge, but it's the new information on the issues that were resolved by the judgment. In this situation, the new issue is one that was not even addressed in the final judgment, and like I said, rightfully so. It wasn't an issue raised in the case. So what you're saying is Judge Fullerton never talked about this new ordinance just related to what Home Rule is, and Home Rule allows this to happen. Exactly, Your Honor, and the issue of retroactivity simply wasn't an issue in the case. Plaintiffs had every opportunity to raise it. We attached the city's amendatory ordinance to our motion for judgment on the pleading, and at any time, the plaintiffs could have challenged the temporal reach of the city's ordinance. They didn't, and they waited until a post-judgment motion requesting new relief, and new relief, that was not directed at the final judgment in any way. Okay. How do you respond to counsel's, Mr. Acosta's argument that the word any in the state statutory authority specifically preempts this Home Rule authority? Well, we respond with the Schachter case, Your Honor, where the same argument was made. In Schachter, the litigant argued that the use of the term municipality without distinguishing between Home Rule and non-Home Rule municipality was enough to evince the legislature's intent to limit Home Rule authority. The court rejected that. It said, no, there's specific limiting language that the legislature routinely uses, and is not shy about using it, and knows how to use. And we, as I argued, we pointed out there's at least seven separate sections of the Illinois Municipal Code where the legislature has done just that. They did not use that language. They know what language to use. They did not use that language with section 11-152. And that's a clear indication that the legislature did not intend to limit Home Rule authority on that subject matter. And in fact, we are now aware that there may be something in the big hopper in Springfield that would make it clear. And if it was already taken care of in the existing statutory authority, why would they have to make it clear? That's right, Your Honor. And at any time, the Illinois legislature can revisit any statute affecting municipality, any statute in Illinois should be limited. They always have the opportunity to do it. And so I think your question goes to the fix that courts ultimately point out in Home Rule cases. The fix is with the legislature and not with the courts. I know I'm probably going to regret this comment, but you are being very generous when you say the legislative wisdom. All right. No, I did enough. Thank you. Now, Justice Burkett or Justice Jorgensen, do you have any questions based upon mine? No. Thank you, Your Honor. All right. Mr. Reeses, you have some time to talk about your client who we have just been badly smearing during these arguments. Do you wish to proceed? Yes, Your Honor. I have three minutes. Don't know if I will use them all, but let me start. So good morning and may it please the court and counsel. My name is Mike Reeses and I am here today for water resources. As to water resources, this court should affirm the dismissal of counts three and six by applying subtle principles of contract law. One of those principles is that plaintiffs have contract rights only as intended or direct third-party beneficiaries. The strong presumption is that defendants contracted only for their own benefit. To overcome that strong presumption, plaintiffs had to identify a provision that was breached and that makes clear that billing directly to benefit a class of upwards of 7,000 users of water meters. The trial court correctly found that while every city contract may incidentally benefit the public, not every contract is intended for their direct benefit and the plaintiffs did not show that they were direct beneficiaries. The trial court should be affirmed. The contract here requires replacement of 7,000 water meters with new electronic meters, hardware, and software. The contract was highly technical and many hundreds of pages. Yet in all those pages, plaintiffs could plead no language manifesting defendant's intention to create third-party rights regarding billing directly for the benefit of 7,000 users of the new equipment. Plaintiffs relied on various provisions which are a mismatch for their breach of contract claims. These provisions were not breached, they are not at issue, and they do not form the basis for the claims. Plaintiffs are not seeking to recover, for example, for damage to their own property, so these provisions do not support third-party recovery. Courts are reluctant to recognize third-party rights in public contracts due to many factors, the threat of enormous liability to a large class, the absence of any pre-existing duty to provide the contracted for service, the desirability of government control over litigation, and the unlikelihood that the contracting parties intended to impose an obligation on a promisor which third parties could enforce. If anything, there is a stronger presumption against the creation of third-party rights in public contracts than in private contracts. These factors argue against the creation of third-party rights potentially to a class of 7,000 users. Under the contract with the city, Water Resources promised performance directly to the city. The meters helped the city to collect revenue from users of the upgraded system. The benefit to plaintiffs was intended to be indirect, as would be true of any other public contract. If plaintiffs were correct, then every user would have a potential claim, and such a large class would be inconsistent with the clear intent to benefit test required for public contracts under Illinois law. Absent a clear intent to create third-party rights, the contract was only incidentally for plaintiff's benefit. The trial court's dismissal should be affirmed. Thank you, and I think we've come to the question period. Thank you, Mr. Reeses. Justice Jorgensen, do you have any questions? I do not. I do not have any questions. Thank you. Justice Burkett, do you have any questions? No questions. Thank you. Mr. Reeses, I have to ask a question. When these new meters were installed pursuant to this contract, did the individual homeowners, users, I'm not talking about the non-residential now, I'm just talking about the residents, did they have to agree to the installation of the new meter? Well, I certainly know that they were strongly encouraged in terms of having buy-in, but there is nothing pled, nothing alleged in the first amendment complaint that required that they sign anything, at least nothing that I'm aware of, and nothing that was attached as an exhibit to the pleadings. So, you raise a very good question, and I think that the purpose, not the purpose, I think that there was a lot of effort made to have the city residents buy into the contract, but I'm actually not aware of any provision that said that they had to sign anything to that effect. And you see why I'm asking, if they did have to agree to let the people in, whatever the case may be, to put the meter in, that might change the benefit that they are actually now a more direct beneficiary, possibly? Well, I think that's a matter of speculation. And by the way, it's not been argued, to my knowledge. I know we certainly didn't have time today, but even if you go back over the briefing and in the record, there's nothing on it, so I think it's just a matter of speculation. There is still, or I am assuming there is still some conflict or litigation between you and the city of, not you personally, but your client and the city of West Chicago concerning this issue? I'm not aware of any litigation between the city and Water Resources. All right. So Mr. Acosta's argument that, well, you don't have to take it from my client, you know, it won't be free, complimentary, or whatever you want to call it, and the city won't suffer because Water Resources is out there to make up the difference. Do you want to respond to that a little bit? Well, I think Mr. Acosta just demonstrated why we have a rule that severely limits third-party beneficiary rights. Contracts between the city and Water Resources, and it's up to the city if they want to pursue a remedy. That's up to the city, not up to 7,000 people. Okay. Thank you very much. Do either of my colleagues have questions based upon mine? I do not. I do not, Your Honor. Thank you. Thank you very much, and thank you, Mr. Reeses. We will now go back to Mr. Acosta. Do you have any rebuttal you wish to offer? And you need to unmute so we can hear it. Thank you. Yes. Have I been unmuted successfully here? Yes, you are now unmuted. Excellent. Well, first of all, I just want to thank the justices for their time and their very insightful questions regarding these important issues. I'd like to start my rebuttal simply by addressing something that I think Justice Hutchinson asked about, and that was some purported legislation, perhaps pending, in Springfield about this issue. I am unaware of that, number one, but it reminded me of the concept of post-remedial measures, which is in the law, and the concept there is that if somebody goes to correct something after an incident, it doesn't necessarily imply what the standards should have been or were at the time of the incident itself, and it's usually barred as a post-remedial measure. That's speaking in the case of premises liability and that kind of line of cases, but the concept is similar. The rationale is reasonable. That is, if the state is going back to try to add language like that, that's great. That, I guess, clarifies it, but it doesn't mean that our position is inaccurate from the time that it happened here in 2019. So that's issue number one. I was struck by the lack of discussion in the city's defense about the standards of Palm versus 2800 Lakeshore Drive. This is a Supreme Court case directly on point that sets up a prerequisite analysis before we get into the need for express language in a statute that would limit the concurrent exercise of Home Rule authority. Before you get there, you have to meet the constitutional requirements of 6A, that it be a local governmental issue. So I didn't hear any discussion about whether a statewide vital interest is at play. All I heard was West Chicago has incurred these unfortunate water meter problems. The same rationale could be made by all municipalities. Every single municipality that runs a water works would have its own set of potentially difficult and challenging circumstances to meet the state mandate. That doesn't matter. It doesn't matter that they have their own local circumstances. What matters is that a vital state interest is at play. And if you read Palm correctly, we believe, you have to take that into account in judging whether the issue being regulated is, in fact, a local governmental affair. In Palm, it said that part of that analysis requires figuring out whether a state, a vital state interest is at play. Defendants have completely ignored that, as far as I can tell. With regard to the jurisdictional issue, and Justice Burkett asked a very insightful question, that is, the motion to limit the scope of the judgment order was absolutely, without any doubt, a motion to modify that judgment order. And the modification was because, let's look at this sequence chronologically here. A complaint was filed in February of 2019. Over two months later, this ordinance is enacted. Well, the complaint's already on file, so how could the issue have come up about retroactivity of an ordinance that didn't even exist in our original complaint? Now, counsel says, well, you could have modified your claims, et cetera. We were in the middle of arguing the entire time about whether this was a That is a preliminary analysis. It didn't go into the substance of retroactivity. The court's order of October 15th, the judgment order, did not talk about the temporal reach of this ordinance at all. It didn't say whether it was prospective. It only didn't say it was retroactive. It didn't say anything about that. It was an issue that was buried in the substance of the ordinance. So what we did is we said, okay, judge, we understand that you have ruled on the constitutionality aspect of this. As an alternative, would you please consider for the first time this allegation or this position that the retroactivity is valid? So it was a request to modify the scope, the breadth of the original order. That's absolutely going to the substance of the order and seeking a modification and it meets the requirements as Justice Burkett pointed out with Supreme Court Rule 303. With regard to this, the third-party beneficiary issue, if you look through the various examples that we cited in our brief, there are multiple specific intended benefits to the city's residents. The points that we highlighted from the contract included providing full customer service package during installation to the city's customers, working with the city to promote the project to achieve buy-in from the residents, collecting relevant data electronically on each water customer account to be used to populate the system software, honoring warranties and warranty repairs and maintenance, and providing long-term customer support. You had water resources coming to their individual properties, providing this new system that was supposed to give them real-time readings of their water usage. They could wake up in the middle of the night and hit an app on their phone and see what their water bill looked like. That is absolutely an intended benefit to these customers. For all of these reasons, we would ask that the June 5th, 2019 order granting the motion to dismiss for water resources be reversed. We would ask that the October 15th, 2019 judgment order be reversed on the grounds that the Home Rule ordinance was not constitutionally supported and illegitimate because it was admittedly a defense to this lawsuit and didn't follow the enumerated purposes under 6A as well, which I don't think council addressed. And then lastly, the December 17th order, which denied the retroactive limitation, we would ask that respectfully that this court would reverse all of those trial court orders and remand this case to the trial court for further proceedings. Thank you so much for your time. Thank you, Mr. Acosta. Justice Jorgensen, do you have questions? I have no additional questions. Thank you. Justice Burkett, do you have any questions? No, I have no additional questions, but I do appreciate being characterized as insightful. Thank you. We'll record that one for the record, Justice Burkett. I do have one question, Mr. Acosta, and that is I'd like you to just comment as briefly as possible on a comment that just now in a special concurrence to Palm, where he said that home rule municipalities may choose to govern locally in differing manners is entirely consistent with the purpose of home rule authority. Indeed, the possibility that different home rule units may adopt similar ordinances with differing requirements should be of no concern. The grant of home rule powers contemplates that different communities which perceive a problem differently may adopt different measures to address the problem, provided that the legislature has taken no affirmative steps to circumscribe those measures. Doesn't that say home rule jurisdiction is basically very broad, unless it is properly and specifically preempted? Well, Justice Hutchinson, it certainly, at its face, suggests that. But let me tell you why this case differs from that briefly. The enumerated reasons for home rule authority in section 6A, again, include the protection of public health, safety, morals, and welfare to license to tax and to incur debt. So when Justice Thomas makes that kind of an observation, it's certainly reasonable that different communities will, for example, feel that excessively high weeds should be fined at different levels. Let's say that one community is more affluent and the fine set by the state won't make much of a difference there. I'm thinking of some northern suburbs where, the fine should be much higher than it would be in Dalton or some southern suburbs, because it makes sense from a local standpoint. And they're trying to regulate issues of, as enumerated here, the public health, safety, morals, et cetera. This is not that case. There's a preliminary analysis that's required. And the city of West Chicago here is not changing its billing practices to promote public health, safety, morals, and welfare. What they're doing is they're trying to defend themselves against a valid lawsuit that points out that they violated state law for 20 months, even before this was enacted. Their motivation is illegitimate. And so the comment that you made about Justice Thomas, it just is out of context with regard to the facts of this particular case. We would urge the court to look at that very strenuously and realize that the illegitimacy that's being alleged here by the plaintiffs comes from that specific issue, the motivation of it, and the fact that it's not constitutionally supported a purpose to enact this ordinance. Thank you, Mr. Acosta. And in fact, thank you, all counsel who have presented today. It has been very informative and very well done. We will take the matter under advisement, except the part about Justice Burkett, and issue a decision in due course. Thank you very much. Mr. Clerk, you may end this meeting. Thank you. Thank you very much, Your Honor. You're welcome. Thank you.